ANGEL FERNÁNDEZ, Plaintiff and Appellee, *v.* GUMERSINDO FALÚ ET AL., Defendants and Appellants.

No. 4814. Argued March 12, 1930.—Decided February 26, 1931.

856

*Feliú & La Costa* for appellants. *Arturo Aponte* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is an action for specific performance of a contract. It was decided in the District Court of San Juan in favor of the plaintiff. The defendant, Falú, really is not interested in the suit. The judgment was rendered against the defendant spouses Suárez-Zengotita, who took the present appeal and have assigned eleven errors.

The trial judge delivered an opinion which it seems advisable to reproduce here at length, as it contains a clear summary of the pleadings, the evidence and the reasons that led him to decide the case against the *defendants-appellants.* It is as follows:

"In accordance with the allegations of the complaint which are admitted, under oath, in the answer, the court considers the following facts as proved: That by deed No. 252 of September 23, 1924, executed before notary Heriberto Torres Solá, the plaintiff bought from the defendants Falú and Suárez a rural property of 161.52 acres (cuerdas) situated in the ward of Sabana Llana, municipality of Río Piedras; that the said deed contained a clause, which textually reads as follows:

" 'THIRD. It is agreed that a survey shall be made of the property sold and referred to in the first paragraph of this deed and Gumersindo Falú does hereby expressly convey, renounce and assign in favor of Juan Suárez y Pérez any number of acres in excess of the 161.52 acres which has served as a basis for the purchase price, which excess, if any, shall be received and owned by the said Suárez y Pérez, who shall be paid therefor by Ángel Fer-

nández Ortiz at the same price for each acre as that of the acres sold, it being further expressly agreed that in everything concerning the survey and payment of the acres left over, if any, Juan Suárez Pérez and Angel Fernández Ortiz shall deal directly with each other, the expenses of the said survey to be paid in equal shares by each of them; . . .' " that to provide better security the plaintiff and the defendant subscribed an instrument which literally copied reads as follows:

" 'This agreement, made in Naguabo, Puerto Rico, on the 23rd of September, 1924, between Juan Suárez Pérez on the one part and Angel Fernández Ortiz on the other part, witnesseth: That pursuant to the terms agreed upon in clause third of a deed of even date executed before notary Heriberto Torres Solá between Gumersindo Falú and Angel Fernández Ortiz, the latter promises to pay to Juan Suárez Pérez for any resulting excess of acreage over and above 161.52 acres at the rate of $160.00 per acre; and further the said Juan Suárez Pérez expressly binds himself hereby to compensate the said Angel Fernández Ortiz at the same rate for any deficiency in acreage if after a survey the property is found to contain less than the said 161.52 acres. The description of the property referred to in this agreement is contained in the said deed.' (Some signatures follow.)

"The defendants admit that the survey was made by R. González Requena, who drew the map according to the survey; but they specifically deny that the area of the estate is 145.94 as appears from the survey, and, claiming that they had not been given timely notice of the survey, they deny that they are bound to pay half the fees of the surveyor who did the work, or the difference in acreage between the area contracted for and that appearing from the survey. The defendants also filed a cross-complaint in which they allege that the survey had to be made by a person designated by common agreement between the parties, and since this was not done the court should designate such a person.

"The case went to trial on April 11, 1928, the plaintiff and the defendants, Juan Suárez Pérez and Mercedes Zengotita, only appearing. At the commencement of the trial the latter filed a supplemental answer in which they allege under oath as follows:

" 'That on July 28, 1927, by public deed No. 125 executed before notary Heriberto Torres Solá, of Río Piedras, the plaintiff in his own behalf and as attorney-in-fact of his wife, sold the property described in the complaint to Isidoro Ortiz, for which reason

858

these defendants allege that on that date, and ever since, the plain-- tiff has ceased to have any interest in the present action against. these defendants.'

"In accordance with the above answer they moved the court to· render a judgment on the pleadings and to dismiss the complaint.. The plaintiff opposed the motion, which the court denied. There-- upon the evidence was heard, and the court took the case under· advisement.

"The existence of a contractual relation between Suárez and Fernández, to which Falú is not a privy, in regard to the area of the tract sold by the latter to the plaintiff, clearly appears from: the documentary evidence. Such relation expressly appears from the document transcribed in the complaint and in the cross-com- plaint, subscribed by Suárez and by Fernández and which we copied. above.

"A contract is an act or agreement whereby one or several persons consent to bind himself or themselves with regard to another· or others to give something or to render some service. That is,. the juridical relation which arises from the concrete of two or· more wills. Which were the voluntary relations which gave rise· to the contract? The instrument above referred to supplies the answer: Fernández promised to pay to Suárez for any number of acres in excess of 161.52 which might result at $160 per acre;· Suárez promised to pay to Fernández at the same rate for any number of acres less than 161.52 after a survey of the tract was: made. The question, then, is a simple one. It is only a ques- tion of determining what was the actual area of the property sold by Falú as containing 161.52 acres. If the area is larger, Fernán-- dez must pay for any excess; if the area is smaller, Suárez must· make compensation for the deficiency. For this purpose, both parties appraise the value of each acre at $160. It is established. by the evidence, without contradiction in this respect, that a survey of the tract showed its area to be only 145.94 acres. A simple· arithmetical calculation leads us to the conclusion that the tract· was 15.58 short of the total area for which it was sold. At $160' per acre, such difference amounts to $2,492.80. Let us see now the· circumstances in which the survey was made. The defendant, Suá-- rez, stated to us that the survey was made without his consent and that he had not given any permit to make it. However, the long· correspondence between him and Fernández does not corroborate his: statements. It rather gives the impression that he, obstinately,. without any justification, always avoided to participate in the:

survey, perhaps in the belief that by so doing he could evade the responsibility he assumed in signing the contract. The terms of this agreement are clear, free from all ambiguity, and for a man like Suárez who impressed us as being familiar with legal controversies they can only mean what they clearly, openly and frankly say. Nor could he be ignorant of the fact that a survey was being made. We know witness, González Requena, and his testimony deserves full credence. Suárez and Falú showed him on the premises the corners which should serve him as a basis for the survey. After the survey was made Suárez inquired of him as to the area of the tract. Did Suárez object? No. He calmly waited for the events. Can he argue now that, as no date had been designated for the survey, we are dealing with an obligation for which no period has been fixed and which must be governed by the provisions of section 1095 of the Civil Code? We are not willing to accept such a theory. It was of the utmost importance in this case to ascertain first the area of the tract, since it was upon the extent of such area that the contract hinged. The validity and performance of a contract can not be left to the discretion of one of the parties. Otherwise, no surveyor or engineer competent enough, in the opinion of Suárez, could have been found to make the survey. Why? Because that was not to his interest, because he wanted things to continue thus indefinitely. And after the survey had been made, what prevented Suárez from verifying it? The contract did not stipulate that the survey had to be made by a person chosen by both parties and by common *agreement*. It is stated in clause 3 of the deed that a *survey shall be made of* the property, but without requiring that the surveyor must be chosen by both parties. If either of them was unwilling to act notwithstanding the opportunities afforded by the other, the latter could have the survey made and submit it to the reluctant party so that he might verify the same and act accordingly, and the terms of the contract might be fulfilled. Nothing further can be required by the law. Fernández complied with his part of the contract and Suárez, in refusing or eluding performance on his part, can not take advantage of his own default and negligence. The contract is the law as between the parties and performance can not be eluded by them. A bilateral and onerous contract, such as that existing between Suárez and Fernández, can not be evaded at will by either of the parties.

"There remains for our consideration the question raised by the defendant, Suárez, in his supplemental answer, namely, that as

the estate had been sold subsequent to the commencement of the action and the plaintiff had not reserved to himself any right in regard to the survey, he has forfeited any claim he might have had against the defendants. The gist of this argument is that the defendant has prevented by such sale the performance of the condition upon which depends the liability of said defendant Suárez. There is, besides, the fact that the sale was profitable to the plaintiff who also sold the property as containing the same number of acres stipulated in the purchase from Falú. We fail to see how this can alter the contractual relation between Suárez and Fernández. Supposing, for the sake of the argument, that an excess of acreage had resulted, even though Fernández had sold the property without making any profit or even at a loss, would it not have been his duty to compensate Suárez for the excess acres? Besides, the controversy here does not refer to the title to the property. It is a personal matter between Suárez and Fernández as to the recovery of a certain sum of money under a contract and depending upon the existence of an excess or a deficiency in the acreage of the property in question. Moreover, the survey having been proved, there only remains to be considered its effect on the performance of the contract entered into between Suárez and Fernández. The latter complied with the conditions imposed on him; he executed the mortgage to secure the credit in favor of Suárez, canceled the same, had the property surveyed with the knowledge and even with the intervention of Suárez (see the testimony of González Requena), and he now has a clear, absolute and indisputable right to have the other party, Fernández, perform the contract, by compensating him for the resulting deficiency in acreage, at the price agreed upon. The situation, therefore, is as clear as daylight. There are no shadows, twilights, or obscurities. Fernández performed his part of the contract. Suárez must perform his own part.

" . . . . . . . . . . . . ."

The eleven errors assigned by the appellants in their brief may be summarized thus: 1, insufficiency of the complaint; 2, estoppel on the part of the plaintiff to bring this action; 3, insufficiency of the evidence or erroneous weighing thereof, and 4, erroneous rulings of the court respecting the evidence.

The grounds on which the appellants base their claim as

to the insufficiency of the complaint are: The failure to allege that the surveyor who made the survey had been appointed by common agreement between the parties; that the action is premature because the contract did not fix the period within which the property must be surveyed; and the failure to allege any demand upon the defendant to have the survey made.

After a study of clause 3 of the deed of sale from Falú to Fernández and of the private contract between Fernández and Suárez on which this action is based, we fail to find therein any express stipulation in the sense alleged by the appellants. It was agreed that the property sold "shall be surveyed." Of course, the logical result of such an agreement is that the survey should be made by common consent of the parties and that the only justification for either of them to act independently would be the lack of harmony between them due to unjustifiable acts on the part of the other. But it can not be inferred from this that it was necessary to allege expressly in the complaint that the survey had been made by common consent of the parties. Under these circumstances, we consider sufficient the allegation set forth in the complaint: "That pursuant to the agreement entered into between the plaintiff and the defendants the property the subject matter of the sale must be surveyed. . . and the plaintiff alleges that surveyor R. González Requena having been appointed to make the said survey, he executed the work and drew the map. . . ."

It is also true that no definite period was fixed in the contract within which to make the survey, and there is no doubt that the proper thing was to have such survey made with the knowledge and intervention of both parties; but to our mind, admitting as true the allegations of the complaint, and it is necessary so to admit because a demurrer is involved, it must be inferred from such allegations that the ordinary course of things was followed when appointing surveyor González to make the survey. The complaint might have

been more clear and specific, but such as it was drafted is sufficient and sets up a cause of action.

The question of estoppel is raised in the second assignment of error. At first view, the objection seems well-founded, but after a careful consideration of the facts in the light of the opinion of the trial judge and of the briefs of counsel for both parties, it must be concluded that the judge was right in deciding the question as he did.

The action accruing from the agreement entered into between Fernández and Suárez did not abate because Fernández had sold the property. The sale took place in July, 1927. The present action was instituted in May 1925. In that sale from Fernández to Ortiz, the description of the property is exactly the same as that appearing in the sale, in 1924, from Falú to Fernández. According to the recitals of the deed in the 1924 sale, the purchase price was $20,000, although Fernández claims that the actual purchase price was $26,000, including therein the mortgage which he immediately executed in favor of Suárez. The purchase price in the 1927 sale was $35,500. From both those facts, area and purchase price, the appellants conclude that the plaintiff was estopped from continuing his prosecution of this action.

We will not enter into the interesting discussion which the attorneys for the parties have included in their briefs, as to whether or not the doctrine of estoppel applies in the present case, i. e., whether the appellants who were not parties to the 1927 deed of sale, can invoke this to estop the plaintiff from acting contrary to its instruments. As regards the purchase price, it is sufficient to say that the plaintiff explained that the excess price was not due to any profit made, but to the inclusion in the sale of the canes planted by him in the property; and that if such was not the cause, the fact that the price of the land went up in the course of three years would not alter at all the terms of the 1924 contract, which stands by itself. The question relating to the description of the property is more difficult. The plaintiff and ap-

pellee explains that it was due to the fact that the contract was drafted by the notary, who took the former deed as a basis. The explanation is not of great weight. In the same way that Fernández gave instructions to the notary in regard to the purchase price, which was different, he ought to have given them as to the area, which was also different. But we know nothing regarding the purchaser Ortiz. The sale was not made at so much per acre but for a gross sum. Perhaps Ortiz was acquainted with all the facts; if he was not, we are not sure as to what he can do once he becomes aware that the person who sold to him knew for a certainty that the area of the property was smaller than stated, and that he had an action pending to recover precisely the deficiency in the quantity of the land he had purchased.

The third, fourth and fifth errors, comprising the third group of assignments, refer to the result of the evidence. We think that none of them was committed. The attitude of the defendant, Suárez, appears from the evidence, as summarized by the trial judge in his opinion. The survey was made with his knowledge and, it may also be said, with his intervention. It seems that the sole reason for clause 3 of the deed of sale of 1924 and the private agreement between Suárez and Fernández was a certain boundary existing between the property and "the San José lagoon and its channel." Suárez perhaps thought that the boundary line extended beyond its actual limits and made the contract; but he did all that he could not to comply with its terms when the boundary line was fixed in the survey, in accordance with the maps drawn by the adjoining owner bordering on the lagoon and its channel, The People of Puerto Rico, and its possession since 1917, or at least since 1922, and the area reduced in the manner indicated in the complaint.

Could the survey be relied upon? It was made by a competent surveyor. Some of the deficiencies noted by the appellants in their brief, are non-existent, while others do not have the importance attached to them. The manner in

which the mensuration was made was explained, and similarly as to the data furnished to the surveyor. The appellants could have intervened in time but failed to do so. They might have had another survey made by their own surveyor and they also failed to do so. They chose rather to rely on technicalities which have been overcome by the events themselves.

We do not think that it was the duty of the plaintiff to apply to the court for the purpose of fixing the period within which the survey should be made. He did not act behind the back of the appellants, and when he became convinced of their dilatory and obstructive tactics, he acted by himself and submitted his acts and those of the surveyor who made the survey to the test of a judicial trial, in which the appellants enjoyed all the necessary guarantees.

The statement of the judge in his opinion that: "We know the witness González Requena and his testimony deserves full credence," does not vitiate the finding made so as to justify a reversal of the judgment, as maintained by the appellants without citing cases. Undoubtedly, judicial decisions must be based only on elements furnished by the evidence heard, but it is not possible to prevent judges, who as men of the world mingle in society, from having personal knowledge of the character of many other men, who sometimes happen to appear before them as witnesses. How is it possible that the trier of the facts, who is also the judge who must pass upon the credibility of the witnesses, can conscientiously give the same degree of credit to two men, one of whom he knows to be a liar and the other a person who always conducts himself with honesty and integrity? We, of course, think that great caution should always be exercised and that, as a general rule the judge does not know the witnesses and appraises their testimony on its own merit and by the behavior of the witnesses while testifying; but it is an impossibility to eliminate the judge's personal knowl-

edge as an element in the determination by him as to the degree of credibility which he must accord to the witness.

The errors included in the fourth group of assignments, that is, those relating to the exceptions taken to the evidence at the trial, will not be considered in this opinion. They are without merit. The commission of any of them would have never justified a reversal of the judgment, as they are harmless. A great difference is noticeable between their treatment by counsel for the appellants in his brief and the argument made on the other assignments of error, which are the ones upon which he really lays great emphasis.

The judgment appealed from must be affirmed.